UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRAVELODGE HOTELS, INC., a Delaware Corporation,<br><br>      **Plaintiff,**<br><br>v.<br><br>S.S.B. AND ASSOCIATES, LLC, a Tennessee limited liability company; and CHOONILAL DAYA, an individual,<br><br>      **Defendants.** | Civ. No. 14-cv-883 (KM)<br><br>**AMENDED OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

   This matter comes before the Court on the unopposed motion of Plaintiff Travelodge Hotels, Inc. ("THI") for default judgment and permanent injunction against the defendants, S.S.B. and Associates, LLC ("SSB") and Choonilal Daya, pursuant to the Fed. R. Civ. P. 55(b). (Dkt. No. 11) For the reasons set forth below, I will enter a default judgment. THI is awarded $327,213.03, comprising: (i) $207,414.71 in outstanding fees and interest; (ii) liquidated damages of $76,500; (iii) $34,711.60 in interest on the liquidated damages; and (iv) $8,587.32 in attorneys' fees and costs. I have, in my discretion, denied THI's request for $54,922.80 (trebled to $164,768.40) in compensatory damages for SSB's post-termination violation of the Lanham Act. I do not find trebling appropriate, and in any event the untrebled amount would be duplicative of the amount awarded as liquidated damages. Post-judgment interest from this date will be applied at the appropriate rate in accordance with 28 U.S.C. § 1961. Additionally, SSB is permanently enjoined under the Lanham Act from marketing, promoting, or selling guest-lodging services at the Facility through and with the Travelodge® marks.

1

I.  **BACKGROUND**

THI is a Delaware corporation with its principal place of business in Parsippany, New Jersey. (Compl. Dkt. No. 1, ¶1) SSB is a Tennessee-based limited liability company with its principal place of business in Athens, Tennessee. (*Id.* ¶2) SSB's sole constituent member is Choonilal Daya, a citizen of Tennessee. (*Id.* ¶3)

The Travelodge® Mark

THI is a franchisor of hotels. (Aff. of Suzanne Fenimore in Supp. of Mot. for Entry of Permanent Inj. and Final J. by Default ("Fenimore Aff."), Dkt. No. 9-3, ¶3) THI owns and has the exclusive right to license the use of the service mark Travelodge® and various related trade names (the "Travelodge® marks"). (*Id.* ¶4) These marks are registered pursuant to 15 U.S.C. § 1111. (*Id.* ¶7)

Through its franchise system, THI markets, promotes, and provides services to guest lodging licensees throughout the United States. As part of these franchise agreements, THI allows its licensees to use the Travelodge® marks and promote the Travelodge® brand name. THI contends that the Travelodge® marks "are indisputably among the most famous in the United States." (*Id.* ¶11) Whether or not that is the case, I take judicial notice that they are well known.

The Agreements

On June 5, 2007, THI entered into a License Agreement (the "License Agreement") with SSB for the operation of a 37-room Travelodge guest lodging facility (the "Facility") located at 2317 Andersonville Highway in Clinton, Tennessee. (*Id.* ¶19) The License Agreement had a term of 15 years, during which time SSB was permitted to use the Travelodge® marks in order to

operate the Facility as a THI franchise. (*Id.* ¶13; *see* Section 1, License Agreement, Ex. A, Fenimore Aff. Dkt. No. 9-3, at 13)

Under Section 7, Section 18, and Schedule C of the License Agreement, SSB was required to make periodic payments to THI for, *inter alia*, royalties, system assessment fees, taxes, interest, and access to its central reservation system (collectively, "Recurring Fees"). (*Id.* ¶14) Section 7.3 of the Franchise Agreement states that the interest on such Recurring Fees would accrue at the rate of 1.5% per month for all payments that come past due. (*Id.* ¶15)

Section 11.2 lists the circumstances under which THI could terminate the License Agreement, including:

> (1) [failure to] cure a default as provided in Section 11.1...
> (7) [failure to] pay debts as they come due in the ordinary course of business...
> (11) [receipt of] two or more notices of default from [THI] in any one year period (whether or not you cure the defaults)[.]

(*Id.* ¶18) In the event that the License Agreement is terminated pursuant to Section 11.2, Section 13 requires SSB to pay "all amounts owed to [THI]" no later than 10 days after termination. (*Id.* ¶20; *see also* Section 13.2, License Agreement, Dkt. No. 9-3, at 30) It further provides that SSB "will owe [THI] Recurring Fees on Gross Room Revenues accruing while the Facility is identified as a "Travelodge." (*Id.*)

Under Section 12, SSB is obligated to pay liquidated damages within 30 days after termination in an amount equal to "the sum of accrued Royalties and System Assessment Fees during the immediately preceding 24 full calendar months (or the number of months remaining in the unexpired Term...at the date of termination, whichever is less.") (Fenimore Aff. ¶19; *see also* Section 12.1, License Agreement, Dkt. No. 9-3, at 27) Alternatively, Section 12 provides that "Liquidated Damages will not be less than the product of

$2,000 multiplied by the number of guest rooms you are then authorized to operate." (Section 12.1, License Agreement, Dkt. No. 9-3, at 28) Thus, if the sum of accrued Recurring Fees paid in the two years prior to termination is *less* than the product of the number rooms in the Facility multiplied by $2,000, SSB is required to pay the latter, baseline rate.

Section 17.4 states that if legal action is necessary "to enforce this Agreement or collect amounts owed under this Agreement," then the "non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees." (Fenimore Aff. ¶21)

On the same day the parties executed the License Agreement, they also entered into a Satellite Connectivity Services Addendum ("Satellite Addendum") that governed the use of satellite-based Internet connective services at the Facility. (*Id.* ¶22). Section 13(c) of that Satellite Addendum provides that if either the addendum or the underlying License Agreement is terminated, SSB shall pay liquidated damages to THI in the amount of $2,500 within 10 days following the date of termination. (*Id.* ¶23)

Also on June 5, 2007, Daya executed a personal guaranty (the "Guaranty") of the License Agreement. (*Id.* ¶24; *see also* Ex. C, Fenimore Aff. Dkt. No. 9-3, at 67) Pursuant to the terms of the Guaranty, Daya agreed, *inter alia*, that if SSB defaulted, he would "immediately make each payment and perform or cause [SSB] to perform, each unpaid or unperformed obligation of [SSB] under the License Agreement," including the reasonable cost incurred by SSB to defend their rights under either the License Agreement or the Guaranty. (Fenimore Aff. ¶¶25-26)

The Defendants' Defaults and Termination

4

THI alleges that between 2008 and 2012, SSB repeatedly failed to make certain payments required under the License Agreement. (*Id.* ¶27) THI states that it sent letters to SSB on July 10, 2008, October 28, 2009, April 30, 2009, July 6, 2009, April 8, 2010, September 27, 2010, March 28, 2011, October 24, 2011, and March 16, 2012 advising that (i) SSB was in breach of the License Agreement because it owed outstanding Recurring Fees, (ii) that it had 30 days to cure the breach, and (iii) that if did not cure the breach, the License Agreement was subject to termination. (*Id.* ¶28)

On March 28, 2012, THI informed SSB by letter that it had terminated the License Agreement. (Compl. ¶32; *see also* Ex. G., Fenimore Aff. Dkt. No. 9-3, at 144) The letter stated that as of March 24, 2012, SSB owed $153,287.18 in Recurring Fees and $76,500 in liquidated damages under the License Agreement and Satellite Addendum. The letter also demanded that SSB "de-identify" the Facility as a Travelodge franchise and remove any signage or listings displaying any Travelodge® marks.

THI alleges that SSB has continued to operate the Facility under the Travelodge® name even though it is no longer authorized to do so. (Compl. ¶43) By letter dated July 25, 2012, THI again demanded that SSB de-identify the Facility and honor its post-termination obligations with regard to the Travelodge® marks. (Ex. H., Fenimore Aff. Dkt. No. 9-3, at 144)

<u>This Action</u>

THI alleges that SSB continues to impermissibly use Travelodge® marks for its own benefit. On February 7, 2014, it filed this action for a declaratory judgment and permanent injunction. Specifically, THI seeks $491,982.03 in damages from SSB and Daya in his capacity as guarantor. This amount consists of: (i) $207,414.71 in outstanding Recurring Fees, inclusive of the interest that has accrued since the date of the termination of the License

Agreement; (ii) liquidated damages of $74,000 under the License Agreement plus $2,500 under the Satellite Addendum; (iii) interest on those damages in the amount of $34,711.60; (iv) $8,587.32 in attorneys' fees and costs; and (v) $54,922.80 (trebled to $164,768.40) under the Lanham Act due to SSB's unauthorized use of the Travelodge® marks after the termination of the franchise agreement. THI also seeks to permanently enjoin SSB from operating the Facility under the Travelodge® name.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

## II.   ANALYSIS

The entry of a default judgment is "left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Federal Practice and Procedure: Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations

6

regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at * 2.

### A. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Service of a corporate entity, such as SSB, may be made by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" or by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made. Fed. R. Civ. P. 4(h)(1). New Jersey law states in relevant part that service on a corporation may be made:

> [B]y serving a copy of the summons and complaint . . . on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties.

N.J. Ct. R. 4:4-4(a)(6).

If, despite diligent efforts, personal service cannot be made in accordance with N.J. Ct. R. 4:4-4(a)(1), *in personam* jurisdiction may be obtained over any defendant by substituted or constructive service, in accordance with N.J. Ct. R. 4:4-4(b)(1)(C) by:

> [M]ailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode; (2) a minor under the age of 14 or a mentally incapacitated person, addressed to the person or persons on whom service is authorized by paragraphs (a)(2) and (a)(3) of this rule; (3) a corporation, partnership or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its principal place of business, or to its registered office.

N.J. Ct. R. 4:4-4(b)(3).

Here, despite diligent efforts and inquiry, THI was unable to personally serve SSB, Daya, or any person authorized to receive service on behalf of SSB . (Cert. of Bryan Couch in Supp. of Mot. for Entry of Permanent Inj. And Final J. by Default ("Couch Cert."), Dkt. No. 9-2, ¶¶5-6) THI did, however, successfully serve the Summons and Complaint on March 25, 2014 via certified and regular mail as permitted by N.J. Ct. R. 4:4-4(b)(3). (*Id.* ¶7) SSB's time to respond to the Complaint has long since expired. On April 25, 2014, the clerk entered default. (Dkt. No. 5) Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist*, 756 F.2d at 18–19.

### B. Three Factor Analysis

I must now evaluate the following three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d

Cir.1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment.

### 1. Factor 1

The evaluation of the first factor is complicated, of course, by SSB's failure to answer or oppose this motion. My independent review of the record, however, does not suggest that the claims asserted by THI are legally flawed or that SSB could mount a meritorious defense. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that THI has successfully stated claims for relief.

The Complaint asserts eight overlapping causes of action, which, in essence, may be reduced to four claims: (1) SSB breached the License Agreement and is liable in contract for the damages arising from the breach; (2) Daya breached the Guaranty by failing to pay SSB's outstanding debts under the License Agreement; (3) SSB violated the Lanham Act by continuing to operate the Facility under the Travelodge® name after THI terminated the License Agreement; and (4) Daya, in his capacity as guarantor, is personally liable for the damages caused by SSB's alleged Lanham Act violation.

Under New Jersey law, a prima facie case for breach of contract requires that the plaintiff show: (1) a contract between the parties; (2) a breach of that contract; and (3) damages resulting from the breach. *See Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985); *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). The facts alleged in the Complaint establish that those elements are satisfied here. The declaration submitted in support of THI's motion and the exhibits annexed thereto corroborate those factual allegations. Both the License Agreement and Guaranty are valid and enforceable contracts. Those contracts were breached by SSB's failure to pay certain of the Recurring

Fees owed to THI and Daya's failure to personally pay the same. THI has accrued damages as a result of these breaches. In sum, the facts alleged by THI state a claim for breach of the License Agreement against SSB and breach of the Guaranty against Daya. I cannot discern a meritorious defense to these claims from the record before me.

Nor can I discern a meritorious defense to the Lanham Act claims.

Section 32 of the Lanhman Act prohibits the use in commerce of a registered mark in a manner that is "likely to cause confusion, or to cause mistake, or to deceive[.] 15 U.S.C. § 1114(1)(a). To prevail on a Section 32 claim, the plaintiff must demonstrate that "(1) it owns the mark at issue, (2) its mark is valid and legally protectable, and (3) the defendant's use of the mark to identify its goods or services is likely to create confusion concerning the origin of those goods or services." *EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.*, 2006 WL 892718, at *3 (D.N.J. Apr. 4, 2006).

Section 43(a), which applies to unregistered marks, requires a substantially similar showing: (1) plaintiff's ownership of a valid and legally protectable mark, and (2) defendant's use of the mark "in commerce," (3) "in connection with the sale, offering for sale, distribution, or advertising" of goods and services, (4) in a manner likely to confuse customers. *800–JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 281–82 (D.N.J. 2006) (citing 15 U.S.C. § 1125(a) and *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 472 (3d Cir.1994)).

The facts alleged by THI state a valid claim under both Section 32 and 43(a) of the Lanham Act. THI states in the Complaint that it has owned and used the Travelodge® marks and their associated brand names since 1939, that it has notified the public of the registration of these marks pursuant to 15 U.S.C. § 1111, and that the marks continue to retain full legal effect. (Compl.

¶¶11-13) Moreover, Section 1 of the License Agreement expressly states that SSB's license to use the Travelodge® marks expires in the event that the agreement is terminated:

> We own the right to use and to sublicense certain trade names, trademarks, and service marks including the Marks and the distinctive Travelodge System for providing transient guest lodging services to the public under the "Travelodge"...name[] and certain services to its licensees, including the Reservation System, advertising, marketing and training services. We have the exclusive right to license and franchise to you the distinctive "Travelodge" Stems for providing transient guest lodging services. We grant to you and you accept the License, effective and commencing on the Opening Date and ending on the earliest to occur of the Term's expiration or a Termination.

(License Agreement, Dkt. No. 9-3, at 13) There is no question that by continuing to operate the Facility under the Travelodge® name after the License Agreement was terminated, SSB has used the Travelodge® marks "in commerce" and in connection with the sale of guest-lodging services. Finally, I find that the consumers of those services are likely to be confused or deceived by SSB's efforts to hold out the Facility as a Travelodge-affiliated guest lodge. The very purpose of the License Agreement was to permit SSB to associate the Facility with the Travelodge brand in the minds of the public through the use of the Travelodge® marks. THI has thus stated a valid claim under Sections 32 and 43(a) of the Lanham Act to which no defense is apparent.

### 2. Factors 2 and 3

The second and third factors also weigh in favor of default. SSB was properly served on March 25, 2014, but has failed to appear and defend itself in any manner. It is clear that THI has been prejudiced by this dereliction because it has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (find that a defendant's failure to answer prejudices the

11

plaintiff). Additionally, unless there is evidence to the contrary, SSB's failure to answer the Complaint is sufficient to prove its culpability in the default. *Id.* In this case, "there is nothing before the Court to show that the Defendant's failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is no evidence that the defendant's failure to answer the Complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, each of the three factors support the entry of default judgment against SSB. I therefore find that default judgment is warranted.

## C. Remedies

THI seeks the following five forms of monetary relief: (i) $207,414.71 in outstanding Recurring Fees and interest; (ii) liquidated damages of $74,000 under the License Agreement and $2,500 under the Satellite Addendum; (iii) interest on those damages in the amount of $34,711.60; (iv) $8,587.32 in attorneys'fees and costs; and (v) $164,768.40 in treble damages for the Lanham Act violations.

THI also seeks a permanent injunction to bar SSB from the use of any and all Travelodge® marks in connection with the Facility.

### 1. Recurring Fees, Liquidated Damages, and Interest

I will grant THI's request for the amount owed as Recurring Fees and interest, as set forth in Section 7, Section 18.4, and Schedule C of the License Agreement. The itemized statement submitted in support of THI's motion details unpaid Recurring Fees dating back to January 2008. (Ex. I, Fenimore Aff. Dkt. No. 9-3, at 171) The last entry in that statement, dated April 2013,

lists the outstanding balance on the account as $207,414.72.[1] This amount includes interest which accrued at the rate of 1.5% per month as set forth in Section 7.3 of the License Agreement. I will award the full amount of $207,414.72.

I will also grant THI's request for $76,500 in liquidated damages and $34,711.60 interest. These amounts are determined by Sections 12.1 and 7.3 of the License Agreement, and Section 13(c) of the Satellite Addendum.

Section 12.1 of the License Agreement states that liquidated damages shall be the *greater* of either (i) the sum of accrued Recurring Fees paid, or that should have been paid, in the 24 months preceding termination, or (ii) the product of $2,000 multiplied by the number of rooms in the Facility. (*See* Section 12.1, License Agreement, Dkt. No. 9-3, at 28) THI seeks the latter: $2,000, multiplied by the number of guest rooms in the Facility. The Facility contained 37 rooms, which yields a figure of $74,000. THI has chosen to calculate its liquidated damages in this manner, so I presume that it exceeds the sum of the Recurring Fees paid by SSB in the 24 months prior to prior to termination. (*See* Section 12.1, License Agreement, Dkt. No. 9-3, at 28)

Section 13(c) of the Satellite Addendum states that a payment of $2,500 will be required in the event of termination, which may be triggered by the termination of the License Agreement.

Section 7.3 of the License Agreement establishes a monthly interest rate of 1.5% on all unpaid sums owed to THI. I agree with THI that this interest rate applies to the total amount owed as liquidated damages. (Fenimore Aff. Dkt. No. 9-3, ¶47) I also agree as to the date on which the interest began to accrue:

---

[1] THI also says, however, says that this amount reflects the total amount of Recurring Fees owed by SSB "as of September 23, 2014." (Fenimore Aff. Dkt. No. 9-3, ¶39)

April 28, 2012 (*i.e.*, 30 days after the date THI terminated the License Agreement. (*Id.*) The amount of interest owed by SSB is calculated from that date through November 3, 2014, which was the return date for THI's motion for default judgment. The $34,711.60 figure is calculated by multiplying $76,500 by 18% (*i.e.* 1.5% per month), which equals $13,770 in interest per year. That amount is then divided by 365 days to equal $37.73 in interest per day. When the per diem interest of $37.73 is multiplied by 920 days—the number of days between the date of termination and the return date of the motion—the interest owed is $34,711.60.

### 2. Attorneys' Fees and Costs

As to attorneys' fees and costs, I adopt THI's analysis. THI has skimpily documented its attorneys' fees, but they do not seem unreasonable or disproportionate. (*See* License Agreement, Section 17.4, Dkt. No. 9-3, at 32 (giving the prevailing party the right to recover reasonable attorneys' fees); Fenimore Aff. Dkt. No. 9-3, ¶50) I will therefore award $7,800 in attorneys' fees and $787.32 in costs, for a total of $8,587.32.

### 3. Monetary and Injunctive Relief Under the Lanham Act

As for the Lanham Act violations, THI seeks: (1) compensatory damages of $54,922.80 based upon the Recurring Fees that it would have received during the period of infringement; (2) trebling of that sum based on SSB's allegedly deliberate and willful conduct; and (3) injunctive relief barring SSB from the continued use of any Travelodge® marks.

#### a. Damages

The Lanham Act authorizes the Plaintiff to recover "any damages sustained by the plaintiff" to be "assessed by the Court or under the Court's discretion." 15 U.S.C. § 1117(a). District courts, however, have broad discretion to fashion monetary relief under the Act. *See, e.g., Banjo Buddies, Inc. v.*

*Renosky*, 399 F.3d 168, 176 (3d Cir.2005); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.,* 627 F. Supp. 2d 384, 480 (D.N.J. 2009).

Additionally, under subsection b of § 1117:

> [T]he court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, ... together with a reasonable attorneys' fee, in the case of any violation of section 32(1)(a) of this Act, ... that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark, ... in connection with the sale, offering for sale, or distribution of goods or services.

15 U.S.C. § 1117(b).

Although THI's damages cannot be predicted with exact specificity, the Lanham Act authorizes damages even when they are not susceptible to precise calculations. *See Travelodge Hotels, Inc. v. Elkins Motel Associates, Inc.,* 2005 WL 2656676, at *11 (D.N.J. Oct. 18, 2005) (quoting *Ramada Inns, Inc. v. Gadsden Motel Co.,* 804 F.2d 1562, 1565 (11th Cir. 1987)). "Franchise fees normally received for use of a mark are a proper measure of damages under the Lanham Act." *Id.*

Here, THI seeks damages based on the lost Recurring Fees to which it would have been entitled post-termination, assuming that SSB had continued on as a franchisee as contemplated by the contract. The infringement period is said to run from March 28, 2012 (the date the License Agreement was terminated) to November 3, 2014 (the return date for the default judgment motion). THI has not been able to ascertain the actual amount of gross room revenue earned by SSB in this time period, but it estimates that figure based on the Facility's average Gross Room Revenues in the two years preceding the termination of the License Agreement. (Fenimore Aff. Dkt. No. 9-3, ¶49) During that two-year period, the Facility earned an average of $21,538.37 in Gross Room Revenue per month. (*Id.*) Therefore, THI

15

says, SSB would have been obligated to pay Recurring Fees of $1,830.76 per month (*i.e.* $21,538.37 multiplied by 8.5%). (*Id.*; *see also* Section 7, Section 18.4, and Schedule C, License Agreement, Dkt. No. 9-3, at 33, 46, and 65) When that amount is multiplied by 30 months (the number of months in the infringement period), the result is $54,922.80. THI then requests that this amount be trebled to $164,768.40 pursuant to 15 U.S.C. § 1117(b) because, it says, SSB's infringement of the Travelodge® marks was deliberate and willful. (Fenimore Afff., Dkt. No 9-3, ¶49)

Initially, I decline to treble any Lanham Act damages. On this record, I cannot reliably conclude that SSB's infringement is deliberate and willful. The amount claimed, without trebling, is $54,922.80.

More to the point, however, is my conclusion that the Lanham Act infringement damages would be unfairly duplicative of THI's liquidated damages. Both are aimed at compensating THI for the lost benefit of the franchise agreement, post-termination. Both are measured by the Recurring Fees that THI would have, but did not, receive post-termination. And in both cases, the amount of such post-termination Recurring Fees is estimated with reference to the historical amount of fees received in the 24 months preceding termination.[2]

---

[2]    Section 12.1 of the License Agreement states that "Liquidated Damages are paid in place of our claims for lost future Recurring Fees under this Agreement." (*See* Section 12.1, License Agreement, Dkt. No. 9-3, at 28) As stated in Section II.C.1., *supra*, the liquidated damages are equal to the sum of the Recurring Fees accrued in the 24 months prior to termination, but in any event a minimum of $74,000. The Lanham Act damages, too, are calculated by multiplying the average monthly Recurring Fees in the 24 months prior to termination ($1,830.76) by a number of months. The only difference is that the number of months is 30 (the alleged infringement period) rather than the 24 month period specified in the liquidated damages provision. Of course that infringement period, too, could have been mitigated by a timely request for temporary or preliminary injunctive relief.

I note also that the $54,922.80 Lanham Act figure is less than the minimum liquidated damages figure of $74,000. Finding that the two measures are duplicative, but that the liquidated damages provision sets a bargained-for minimum, I have decided to award the higher liquidated damages figure and to deny the Lanham Act damages.

### b. Injunctive Relief

Under the Lanham Act, an injunction is a "usual and standard remedy" and "the common historical practice has been that a prevailing plaintiff in a case of ... false advertising will ordinarily receive injunctive relief of some kind." 5 J. Thomas McCarthy, Trademarks & Unfair Competition § 30:1 (4th ed. 2006); *Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed. Cir. 1996).

> In deciding whether to grant a permanent injunction, the district court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest.

*Gucci America, Inc. v. Daffy's Inc.*, 354 F.3d 228, 236–37 (3d Cir.2003) (quoting *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir.2001)).

I have already found that SSB likely has no meritorious defense to THI's Lanham Act claims. *See* Section II.B.1, *infra*. Accordingly, THI has shown a likelihood of success on the merits. As to the second factor, the Third Circuit has stated that "trademark infringement amounts to irreparable injury as a matter of law." *Gucci America*, 354 F.3d at 237. But this does not the end irreparable injury inquiry; the Court must also consider the harm that SSB would suffer if the injunction is granted. Although using the Travelodge® marks without THI's consent may have been good for SSB's business, that is

17

not a benefit to which SSB is entitled. An injunction would leave SSB in the same position it found itself after THI terminated the License Agreement, namely, unable to lawfully use the Travelodge® marks in association with the Facility. Lastly, it is well within the public interest for the Court to enjoin SSB from deceiving or misleading consumers into believing that the Facility meets the standards represented by the Travelodge® brand. Accordingly, THI is entitled to injunctive relief. SSB is hereby permanently enjoined from marketing, promoting, or selling guest-lodging services at the Facility through and with the Travelodge® marks.

### 4. Liability of Defendant Daya Under the Guaranty

THI seeks to hold Daya liable in his capacity as guarantor for both the damages arising from the breach of the License Agreement—the outstanding Recurring Fees, liquidated damages, interest, and attorneys' fees and costs—and the damages resulting from the Lanham Act violations. I find that Daya, in his capacity as guarantor, is liable in contract for the damages assessed above. The Guaranty states that Daya "irrevocably and unconditionally (i) warrant[s]...that [SSB's] representations and warranties in the Agreement are true and correct as stated, and (ii) that [SSB's] obligations under the Agreement...will be punctually paid and performed." (Guaranty, Ex. C, Finemore Aff. Dkt. No. 9-3, at 78)

It is an open question whether Daya—a guarantor under the agreement—would have been liable for SSB' post-termination commission of the intellectual property tort of trademark infringement. I have found, however, that THI is not entitled to Lanham Act damages.

## III.  CONCLUSION

For the foregoing reasons, a default judgment will be entered against defendant SSB and in favor of plaintiff THI, in the total amount of $327,213.63, with post-judgment interest from this date at the appropriate rate pursuant to 28 U.S.C. § 1961. The judgment will be entered against defendant Daya, as guarantor, for the same amount. SSB will also permanently enjoined from using Travelodge® marks in association with the marketing, promoting, or selling guest-lodging services at the Facility.

An appropriate order and judgment will issue.

Dated:  July 27, 2015

KEVIN MCNULTY, U.S.D.J.